UNITED STATES COURT OF APPEALS

DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Donald R. Cowan,<br>          Petitioner,<br><br>     v.<br><br>Federal Communications Commission<br>          Respondent. | Court of Appeals No. 24 -1173 |

---

AMENDED PETITON FOR DECLARATORY JUDGMENT

AND WRIT OF PROHIBITION  [1]

Publication Requested

---

_/s/ Donald R.  Cowan_
Donald R. Cowan, _B.S._ [2]
3768 SE 48th PL
Oklahoma City, OK 73135
(405) 708-1756
Cowan.Radio@gmail.com
Pro Se for Petitioner

---

[1] All Oklahoma, statues, cases authorities, and FCC Authorities as cited in the Table of Authorities for their persuasive attributes, have been attached to this reply by hyperlinking to the appropriate file on the Oklahoma State Courts Network, the Oklahoma Court of Criminal Appeals, and FCC Publications. See footnotes and hyperlinks where applicable.

[2] Mr. Cowan holds a B.S. in Criminal Justice Administration and Ethics, from Mid-America Christian University. Mr. Cowan brings this information to the court's attention, as it establishes that Mr. Cowan is not your average run-of-the-mill "uneducated pro se litigant", and that while he may have confused some doctrinal and legal issues, he is aware of the tremendous labor the Court will have to undertake to reach the merits of his claims.  To that effect the Court should take note that if there ever was to be a case, warranting a constitutional challenge of the Federal Communications Commission Expansion of its Character Policy, due to a "Fundamental Miscarriage of Justice, thereby shocking the conscience of the Court" this is the case. _**See n. 22 for further in-depth information**_.

**Academic Integrity Disclosure – With the exception of the "Statement of the Case" (see n. 3), This Reply is the first "persuasive essay" petitioner has authored since graduating college in 2015, as such his writing skills and structure have suffered greatly due to lack of use, and that he has chosen to closely resemble the format required of lawyers, as opposed to APA formatting; obviously there are errors, but should still be well organized.**

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................. 1

STATEMENT OF JURISDICTION ........................................................................ 1

STANDARD OF REVIEW .................................................................................... 2

ISSUE PRESENTED FOR REVIEW ..................................................................... 2

STATEMENT OF THE CASE .............................................................................. 3

STATEMENT OF THE FACTS ............................................................................ 4

CONSTITUTIONAL ARGUMENT ....................................................................... 7

    1.   The Federal Communications Commissions expanded character policy is unconstitutional as applied to the Petitioner because Petitioners Felony Conviction at issue with the Commissions character policy was obtained in violation of the United States Constitution; and absent that constitutional error, no rational fact finder or jurist would have voted to convict the Petitioner. ............ 7

        A.     Petitioners Felony Conviction at issue with the Federal Communications Character Policy was obtained in violation of the United States Constitution ........................................ 7

        B.     The Federal Communications Commission Extended Character Policy as applied to the Petitioner is Punitive as opposed to Probative and its continued application violates Petitioners First, Fifth, and Eight Amendment Guarantees. ................................................. 15

AVALIABILITY OF RELIEF ARGUMENT ........................................................... 17

    1.   Absent a Declaratory Judgment and an Enforcement Writ of Prohibition, Petitioner has no available avenues of relief. ........................................................................ 17

    2.   A Declaratory Judgment accompanied by an enforcement Writ of Prohibition will create an equitable remedy of relief. ........................................................................ 19

    3.   A writ of Prohibition is appropriately necessary and will aid the current and prospective jurisdiction of this Court by providing an enforcement mechanism protecting a Declaratory Judgment issued by this Court, correcting and thereby preventing further egregious conduct of the FCC in their attempts to circumvent administrative and judicial review of its decisions or the lack thereof as required by proper statutory authority. .................................................... 20

CONCLUSION ................................................................................................... 22

CERTIFICATE OF SERVICE ............................................................................. 23

## **TABLE OF AUTHORITIES**

Cases

Cowan v. Taubenblatt 23-CV-880, Petition for Writ of Mandamus U.S. District Court Western District of Oklahoma (Dismissed on Petitioner's Notice of Dismissal) .................................... 3

District of Columbia v. Heller, 554 U.S. 570 (2008).................................................................. 11

Golden v. Zwickler, 394 U.S. 103 (1969)..................................................................................... 2

Graham v. Connor, 490 U.S. 386, 396 (1989) ........................................................................... 14

In re Barr Labs., 930 F.2d 72, 76 (D.C. Cir. 1991)................................................................. 1, 23

In re Flyers Rights Educ. Fund, Inc., 61 F.4th 166, 167 n.2 (D.C. Cir. 2023) ........................ 1, 23

In re Halkin, 598 F.2d 176, 179-80 n. 1 (D.C. Cir.1979) ............................................................ 1

Longshoremen's Union v. Boyd, 347 U.S. 222 (1954) ................................................................. 1

Mashpee Wampanoag Tribal Council v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003)............ 19

McDonald v. City of Chicago, 561 U.S. 742 (2010) .................................................................. 11

Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) ................................................ 18

RUTH v. STATE 1978 OK CR 79 581 P.2d 919 ¶8 ................................................................ 5, 15

Smith v. State, 932 P.2d 521, 532-33 .......................................................................................... 10

State v. Mitchell, S-2021-880 (Okla. Court of Crim. Appeals) Unpublished ............................. 11

Tennessee v. Garner, 471 U.S. 1, 11 (1985) .............................................................................. 14

Webster v. Doe, 486 U.S. 592, 603 (1988)................................................................................... 1

Statutes

21 O.S. § 1289.2 ........................................................................................................................... 9

21 O.S. § 1289.25 ......................................................................................................................... 9

21 O.S. § 711 ................................................................................................................... 8, 10, 13

21 O.S. § 711 (OSCN 2024) ....................................................................................................... 10

22 OK Stat § 22-1080 (2024)...................................................................................................... 20

28 U.S.C. § 1331 ............................................................................................................................ 1

28 U.S.C. § 1367 ............................................................................................................................ 1

28 U.S.C. § 2201 ............................................................................................................................ 2

47 U.S.C. § 301 ............................................................................................................................. 3

47 U.S.C. § 309.......................................................................................................... 7, 17, 20, 21

5 U.S.C. § 702 .............................................................................................................................. 18

Other Authorities

Arm & Rage, LLC, WJBE(AM), Powell, TN, MB Docket No. 22-122, Initial Decision, FCC 23D-02 ...................................................................................................................................... 17

In the Matter of AUBURN Network, Inc. MB Docket No. 21-20, Initial Decision, FCC 22D-01 ................................................................................................................................................ 17

Memorandum Opinion and Order, 6 FCC Rcd No. 12, 3448 ¶ 16, In the Matter of Policy Regarding Character Qualifications in Broadcast Licensing  Amendment of Part 1, the Rules of Practice to written Responses to Commissions Inquiries and Making of Misrepresentations to the Commission by Applicants, Permittees, and Licensees, and the Reporting of Information Regarding Character Qualifications (1991) ............................................................................. 18

Policy Regarding Character Qualifications in Broadcast Licensing, Amendment of Part 1, the Rules of Practice and Procedure, Relating to Written Responses to Commission Inquiries and the Making of Misrepresentations to the Commission by Applicants, Permittees, and Licensees, and the Reporting of Information Regarding Character ........................................... 4

Policy Regarding Character Qualifications in Broadcast Licensing, Notice of Inquiry, 87 FCC 2d 836, 836-37 (1981) ................................................................................................... 3

Policy Regarding Character Qualifications in Broadcast Licensing; Amendment of Rules of Broadcast Practice and Procedure Relating to Written Responses to Commission Inquiries and the Making of Misrepresentations to the Commission by Permittees and Licensees, Report, Order and Policy Statement, 102 FCC 2d 1179 (1986) ............................................................ 3

## Constitutional Provisions

U.S. Const. Amend 1 ........................................................................................... 15, 16

U.S. Const. Amend 14 .............................................................................................. 15

U.S. Const. Amend 5 ................................................................................................ 16

U.S. Const. Amend 8 ................................................................................................ 16

U.S. Const. Amend. 2 .............................................................................................. 15

U.S. Const. Amend. 4 .............................................................................................. 15

# INTRODUCTION

Petitioner, Donald R. Cowan, Petitions this Court for a Declaratory Judgment and a Writ of Prohibition. Petitioner by this Petition will establish "compelling equitable grounds" for relief. *In re Flyers Rights Educ. Fund, Inc., 61 F.4th 166, 167 n.2 (D.C. Cir. 2023) (citations omitted)*, and that his Petition is "one of the exceptionally rare cases" that warrants a judicial decree prohibiting agency action. *See In re Barr Labs., 930 F.2d 72, 76 (D.C. Cir. 1991)*, and that this Court should issue a Declaratory Judgment and Writ of Prohibition as both are "agreeable to the usages and principles of law" and appropriately necessary "in aid of its jurisdiction" to restore this courts proper judicial balance. Thus, preserving justice, and its Article III constitutional duty to review decisions of the Federal Communications Commission or lack and withholding thereof.

# STATEMENT OF JURISDICTION

The grounds for issuing a writ of prohibition "are virtually identical" to the grounds for issuing a writ of mandamus. *In re Halkin, 598 F.2d 176, 179-80 n. 1 (D.C. Cir.1979)*. This court has Federal Question Jurisdiction, 28 U.S.C. § 1331; *Webster v. Doe, 486 U.S. 592, 603 (1988)* , to hear this Colorable Article III Case and Controversy, and has subject matter jurisdiction *"in aid of its prospective jurisdiction"* pursuant to 28 U.S.C. § 1651.

In addition, this Court having Article III Jurisdiction, has and should exercise supplemental jurisdiction, 28 U.S.C. § 1367, to render a declaratory judgment pursuant to 28 U.S.C. § 2201, *Longshoremen's Union v. Boyd, 347 U.S. 222 (1954)* (holding that a declaratory judgment is only available when there is an actual controversy between the parties*)*, for any supplemental issue that is tied directly to an issue that is within this courts direct subject matter

1

jurisdiction. *Golden v. Zwickler, 394 U.S. 103 (1969)* (holding that a declaratory judgment is available when a party seeks to clarify the meaning of a statute or regulation.)

## STANDARD OF REVIEW

Standard of review for the constitutional claims and arguments presented before this court is "de novo." The recommended level of scrutiny of statutory review should be "Strict Scrutiny" requiring the Government to prove a compelling state interest behind the challenged policy, law, or regulation and that it is narrowly tailored to achieve its results. Furthermore, Petitioner will show that the Government, et al., cannot establish an "important governmental objective, that is substantially related to achieving that objective" as required for "Intermediate Scrutiny", nor is an "interest balancing case-by-case review" otherwise known as the "Rational Basis Test" available, because there are fundamental enumerated constitutional rights and privilege's hanging in the balance barring a "Rational Basis Review."

## ISSUE PRESENTED FOR REVIEW

There are Two [2] issue presented for review (1) Whether or not the Commission Character Policy is Unconstitutional as applied to the Petitioner. (2) Whether or not a Writ of Prohibition is appropriately necessary in aid of this courts current or prospective jurisdiction.

## STATEMENT OF THE CASE [3]

The United States maintains control over all channels of radio transmission.[4] Individuals may use these transmission channels for limited periods of time under specific licenses granted by a federal authority.[5] The Federal Communications Commission ("FCC" or "Commission"), is the federal authority designated by Congress to issue such licenses for private operation of radio stations.[6] Licenses are granted upon application if it serves "the public convenience, interest, or necessity."[7] This determination involves weighing many factors, one of which is the applicant's character qualifications to hold a license.[8]

The FCC announced its first Policy Regarding Character Qualifications in Broadcast Licensing over forty years ago.[9] In that 1981 publication, the FCC noted that it had been weighing applicants' character "[w]ithout . . . clear guidelines," which had inadvertently led to inconsistent character determinations.[10] By 1986, the FCC had established a comprehensive character policy statement.[11] And by 1991, the Commission concluded that consideration of a broader range of criminal conduct was appropriate.[12] More specifically, the FCC found that "a propensity to comply with the law generally is relevant to the Commission's public interest

---

[3] The Statement of the Case and all associated foot notes and research points were adapted from the Statement of the Case of the Respondents Motion to Dismiss – Cowan v. Taubenblatt, 23-CV-880, Petition for Writ of Mandamus U.S. District Court Western District of Oklahoma (Dismissed on Petitioner's Notice of Dismissal)

[4] 47 U.S.C. § 301

[5] Id.

[6] Id. § 303(1).

[7] Id. § 307(a).

[8] Id. § 308(b) (discussing the requirements and conditions for a license, to include setting forth facts as to the applicant's character).

[9] See Policy Regarding Character Qualifications in Broadcast Licensing, Notice of Inquiry, 87 FCC 2d 836, 836-37 (1981).

[10] Id. at 836-37.

[11] Policy Regarding Character Qualifications in Broadcast Licensing; Amendment of Rules of Broadcast Practice and Procedure Relating to Written Responses to Commission Inquiries and the Making of Misrepresentations to the Commission by Permittees and Licensees, Report, Order and Policy Statement, 102 FCC 2d 1179 (1986).

[12] See Policy Regarding Character Qualifications in Broadcast Licensing, Amendment of Part 1, the Rules of Practice and Procedure, Relating to Written Responses to Commission Inquiries and the Making of Misrepresentations to the Commission by Applicants, Permittees, and Licensees, and the Reporting of Information

analysis," noting that "an applicant's or licensee's willingness to violate other laws, and, in particular, to commit felonies, also bears on [its] confidence that an applicant or licensee will conform to FCC rules and policies."[13] Accordingly, the Commission found that consideration of an applicant's character must include whether the applicant has a felony conviction, "[b]ecause all felonies are serious crimes."[14] Thus, "any conviction [of one] provides an indication of an applicant's or licensee's propensity to obey the law" and abide by Commission rules.[15] Even with this finding, however, the Commission recognized that not all felony convictions are equally probative of an applicant's character.[16] As a result, it has identified mitigating factors that are taken into account.[17]

## STATEMENT OF THE FACTS

On September 18, 2023, Petitioner applied to the FCC, application file No. 0010699073, for an amateur radio station license and noted his past felony conviction for manslaughter.[18] Several days later, Petitioner received an email from an FCC staff member[19] within the Wireless Telecommunications Bureau that "the Commission is reviewing its policies regarding certain types of offenses" including his convicted offense, and that Petitioner's application will stay pending until the commission completes its review. Since the Commissions focuses is on character issues that bring into question whether or not the Petitioner can be trusted to deal

---

Regarding Character Qualifications, Policy Statement and Order, 5 FCC Rcd 3252, 3252, ¶ 2 (1990), recon. On other grounds, 6 FCC Rcd 3448 (1991), modified on other grounds, 7 FCC Rcd 6564 (1992) (available at https://docs.fcc.gov/public/attachments/FCC-90-195A1.pdf) (noting that the 1986 Character Policy Statement "took an overly narrow view of the range of misconduct that should be relevant in licensing decisions covered by it").
[13] Id. ¶ 3.
[14] Id. ¶ 4.
[15] Id.
[16] Id. ¶ 5
[17] Id.
[18] Petitioners FCC Application and his attached Felony Statement are available at https://wireless2.fcc.gov/UlsApp/ApplicationSearch/applMain.jsp?applID=14268979
[19] Mindy DeJesus, Management Analyst – Wireless Telecommunication Bureau

truthfully with the Commission and follow its rules, a discussion of the facts as outlined in Petitioner's *Felony Attachment to his Application* is necessary.

   On January 10, 2004 the Petitioner who was gainfully employed as an Armed Security Guard, and certified by the Oklahoma Council for Law Enforcement Education and Training, discharged his firearm in the line of duty to prevent the commission of a Murder, hence mortally wounding his assailant. Almost a year after previously being cleared of criminal liability the Petitioner contacted Assistant District Attorney Steven Kunzweiler [20] and demanded that he authorize the return of Petitioner's firearm, as the Police had refused to return said firearm.

   This resulted in a very heated discussion and argument as to the due process requirements of personal firearm possession and its unlawful seizure by the State. As a result of this exchange Tulsa County Assistant District Attorney Steven Kunzweiler maliciously charged Petitioner, on January 3, 2005, CF-2005-1, with Manslaughter in the First Degree by Dangerous weapon on account of Petitioners demand for the release of his firearm, his refusal to retreat even though he had no duty to retreat, nor could Petitioner retreat with absolute safety.

   Petitioner requested a jury trial which was eventually held in October of 2007 and, after procedurally being denied, by the Tulsa County District Court for the State of Oklahoma, via Dicta of the Oklahoma Court of Criminal Appeals, of his constitutionally guaranteed, fundamental right of self-defense, and affirmed by a Jury of his peers*, see RUTH v. STATE 1978 OK CR 79 581 P.2d 919 ¶8*, [21]  Petitioner was ultimately found guilty during sentencing and then sentenced to the minimum allowable sentence of 4 years in the custody of the Oklahoma

---

[20] Assistant District Attorney Steven Kunzweiler is now the Elected District attorney for Tulsa County, State of Oklahoma. See n. 22 for supplemental discussion as to District Attorney Steven Kunzweiler.
[21] "This Court has always held that the right of self-defense cannot be invoked by an aggressor or by one who voluntarily enters into a difficulty armed with a deadly weapon, no matter how great his or per peril becomes." Available at https://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=1376

Department of Corrections. The jury did not order a fine as part of Petitioners punishment and the trial judge outright refused to grant the prosecutors "Special Request for Victim Compensation" in the amount of $2,500 as an over-reach further bordering on malicious prosecutorial behavior. *See n. 22 below for other relevant background on the Prosecutors Conduct.*

Petitioner was sentenced on November 15, 2007 and subsequently discharged from the Oklahoma Department of Corrections on May 20, 2011. Upon release from prison Petitioner maintained gainful employment and continued to be a productive citizen of society, including exercising his right to vote, just as he had prior to his incarceration. In addition, the Petitioner applied for and was admitted to Mid-America Christian University in Oklahoma City, Oklahoma where he earned a Bachelor's of Science, in Criminal Justice Administration & Ethics in 2015. Furthermore, since release from prison Petitioner has not had any involvement with law enforcement or the courts on account of illicit conduct and character.

ln 2018 Petitioner, retired from the workforce due to injuries previously sustained, while actively deployed and engaged in a Combat / hostile environment during the Global War on Terrorism - Operation Enduring Freedom. Hence, given Petitioners prior affiliation with the United States Air Force he has chosen to pursue the Amateur Radio hobby to gain additional skills and experience that can be utilized in community service [22] as he had planned to submit an

---

[22] Petitioner has a well-established record of public service to his community and the State of Oklahoma. He was an active member of Eight (8) years of Service in the Oklahoma Air National Guard serving as a Security Forces Journeyman (Military Police) with the 138th Fighter Wing, 138th Security Forces Squadron Tulsa IAP, when this incident occurred, and while waiting for Trial he was successfully "hired" and subsequently received a Reserve Peace Officer Certification from the Oklahoma Council of Law Enforcement Education and Training, for the City of Cromwell Oklahoma serving on a volunteer reserve peace officer status. Every step of the way Petitioner was honest with everyone about his pending charge and the circumstances that led to his use of force.

Furthermore, unofficially, while off the record every Judicial Officer that reviewed this case before trial, due to the fact that this whole encounter was a perfect case of self-defense and objectively confirmed by surveillance camera and further considering the City of Tulsa was in a very public heated reparations discussion (continued next page)

application for membership in the Civil Air Patrol, a civilian auxiliary of the United States Air Force, volunteering in its Emergency Services Communications Wing.

*Wherefore*, considering the totality of these circumstances, Petitioner respectfully asked in his written felony disclosure that the Commission grant him an Amateur Operator License, and as a result of Petitioners Felony Disclosure, the wireless Telecommunications Bureau having passed "moral judgment" has declared petitioner, *persona non grata*, and refuses to process Petitioner's application, thereby refusing to "determine whether the public interest will be served", 47 U.S.C. § 309(a), resulting in Petitioner petitioning this Court for relief.

## CONSTITUTIONAL ARGUMENT

1. **The Federal Communications Commissions expanded character policy is unconstitutional as applied to the Petitioner because Petitioners Felony Conviction at issue with the Commissions character policy was obtained in violation of the United States Constitution; and absent that constitutional error, no rational fact finder or jurist would have voted to convict the Petitioner.**

   A. Petitioners Felony Conviction at issue with the Federal Communications Character Policy was obtained in violation of the United States Constitution.

---

(n. 22 Continued from previous page) over the 1921 Tulsa Race Riots and Massacre, they explicitly expressed contempt for the Prosecutor's and the two homicide detectives for the Tulsa Police Department's arrogant condensing attitude towards the Petitioner status as a "Security Guard", and that their position as law enforcement officers was far superior to that of a "guard" and that a legitimate law enforcement interest existed due to the long range of a bullet thus potentially posing unnecessary risk to the public, and this concern alone requires that an example has to be made to prevent the further public discharge of firearms by non-law enforcement personnel.

In addition, Every Judicial Officer, including the Trial judge that retired shortly after conducting Petitioners Trial, further expressed concern that Petitioner was singled out for selective, vindictive, and malicious prosecution to prevent racial tensions within the community as Petitioner is Caucasian and his assailant was Black, they further expressed a disdain of the Prosecutors legal theory that Petitioner became an aggressor by "voluntarily entering into difficulty armed with a deadly weapon" because of his refusal to retreat, thus allegedly rendering the Homicide unjustifiable as an "unnecessary use of force to prevent the commission of a Murder." They further expressed a concern that this Prosecution would set a bad precedent further eroding the personal right of self-defense, even with a pending U.S. Supreme Court Decision on the horizon i.e., *District of Columbia v. Heller, 554 U.S. 570 (2008)*. This will be further expounded, in petitioners Constitutional Challenge of the Commissions Application of its Character Policy as it relates to the Petitioner.

7

The relevant portion of Oklahoma's first-degree manslaughter statute as applied to the Petitioner defines the crime as homicide "perpetrated without a design to effect death, and in a heat of passion…by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide…[or] When perpetrated unnecessarily…while resisting an attempt by the person killed to commit a crime" 21 O.S. § 711 (OSCN 2024).[23]

Oklahoma classifies homicide as Justifiable, 21 O.S. § 733 , [24] under the following Circumstances:

    A. Homicide is also justifiable when committed by any person in any of the following cases:

        1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is;

        2. When committed in the lawful defense of such person or of another, when the person using force reasonably believes such force is necessary to prevent death or great bodily harm to himself or herself or another or to terminate or prevent the commission of a forcible felony; or

        3. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing any riot; or in lawfully keeping and preserving the peace.

    B. As used in this section, "forcible felony" means any felony which involves the use or threat of physical force or violence against any person.

In addition the Oklahoma Firearms Act of 1971 further dictates that "a person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent

---

[23] Manslaughter Statute, available at https://www.oscn.net/applications/oscn/deliverdocument.asp?citeid=69314
[24] Justifiable Homicide, available at https://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=69324

death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony." 21 O.S. § 1289.25(D). [25] The Oklahoma Firearm Act of 1971 also provides an immunity from being charged and prosecuted for using a firearm in Self Defense. Id. ¶ F

The statutory fact pattern as to Petitioners use of force for the most part is not in dispute. The State of Oklahoma ("Prosecutor") conceded that the Petitioner had an objectively reasonable fear that he was about to be murdered. The Prosecutor conceded that Petitioner's assailant was the initial aggressor and was in the actual Commission of a Forcible Felony when the homicide occurred. The Prosecutor conceded that the Petitioner had thoroughly articulated an objectively reasonable standard for his use of deadly force and that he was objectively justified in his believe that Self-Defense was necessary and that Petitioner had established Justifiable Homicide. The prosecutor conceded that Petitioner was in his place of employment as an Armed Security Guard and was therefore at a place he had a lawful right to be.

However, the Prosecutor alleged that the Petitioner was not entitled to reach a legal claim of justifiable homicide because "the Legislature finds as a matter of public policy and fact that it is necessary for the safe and lawful use of firearms to curb and prevent crime wherein weapons are used by enacting legislation having the purpose of controlling the use of firearms, and of prevention of their use", 21 O.S. § 1289.2 [26], and pointed to the language of the Manslaughter Statute "when perpetrated unnecessarily…while resisting an attempt by the person killed to commit a crime" to justify the creation of a legal theory that Petitioner had lost the right of self-defense by "voluntarily entering into difficulty armed with a deadly weapon" because of his refusal to retreat, thus allegedly becoming an "aggressor", See *RUTH v. STATE 1978 OK CR 79*

---

[25] No Duty to Retreat, available at https://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=69782
[26] Oklahoma Firearm Act of 1971 – Legislative Findings, available at https://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=69758

*581 P.2d 919 ¶8* [27]*,* rendering the Homicide unjustifiable as an "unnecessary use of force to prevent the commission of a Murder." 21 O.S. § 711 (OSCN 2024)

It should be noted that notwithstanding the fact that Petitioner made a logical conscious choice to *"Bear Arms"* , thereby intentionally killing, another human being in self-defense; under Oklahoma law Petitioner did not commit the Crime of Manslaughter because the phrase "a design to effect death" is treated as synonymous with "an intent to kill." See, e.g., *Smith v. State, 932 P.2d 521, 532-33* (Okla. Crim. App. 1996).[28] Thus, under Oklahoma law, even if a person kills in the heat of passion (passion being a necessary element for Manslaughter by Dangerous Weapon) the killing may not be classified as first-degree manslaughter if the person intended death to result from the act. While it was established that Petitioner had an objectively reasonable "fear" that he was about to be murdered. It cannot be reasonably argued that the moment Petitioner decided to *Bear Arms* employing lethal force and placing three rounds center mass of his assailant's chest that he did not intend for death to be a result. This is the unfortunate reality of Bearing Arms in Self-Defense.

The prosecutor further compounded the Constitutional errors relating to Petitioners First, Second, Fourth, and Fourteenth Amendment Guarantees,  by legitimizing the assigned Homicide Detectives , Tulsa Police Department, arrogant condensing attitude towards the Petitioner status as a "Security Guard", and that their position as law enforcement officers was far more superior to that of a "guard" and  that a legitimate law enforcement interest existed due to the long range of a bullet thus potentially posing unnecessary risk to the public, and this concern alone required that an example had to be made to prevent the further public discharge of firearms by non-law enforcement personnel.

---

[27] See n. 21

[28] Smith v. State, available at https://www.oscn.net/applications/oscn/deliverdocument.asp?citeid=11699

To make sense of this procedural conundrum that was applied to the Petitioner the court should take note that this was before the United States Supreme Court decided *District of Columbia v. Heller, 554 U.S. 570 (2008)* and later incorporating the Constitutional Right of Self-Defense, *McDonald v. City of Chicago, 561 U.S. 742 (2010),* (holding the Due Process Clause of the Fourteenth Amendment extends the Second Amendment's right to keep and bear arms to the states, at least for traditional, lawful purposes such as self-defense), to the States. That being said, the overly broad nature of the Manslaughter Statute is still being used on a case-by-case basis in direct violation of the First, Second, Fourth, and Fourteenth Amendment Guarantees.

State v. Mitchell, S-2021-880 (Okla. Court of Crim. Appeals) Unpublished. [29]

In, State v. Mitchell, the Court of Criminal Appeals approved the dismissal of charges against a peace officer who responded to an active shooter in Blackwell in 2019. Mitchell eventually fired approximately 60 rounds into, or at, the shooter's truck during his response to and pursuit of the shooter. The shooter was later pronounced dead at the scene and the medical examiner's report recorded multiple gunshot wounds to the shooter's head and back and injuries to the brain, left lung, heart, and abdominal organs.

The incident began in the early morning hours of May 20, 2019, when the shooter, driving a white pickup, twice rear-ended a vehicle in town. When the driver of the damaged vehicle stopped to look at the damage, the shooter pulled up to him and told him nothing was wrong with his vehicle. When the driver responded to the shooter that his vehicle was damaged, the shooter pulled out a semiautomatic handgun and fired two gunshots into the hood of the stopped vehicle. The shooter eventually drove off. The driver called police and several officers responded to investigate.

---

[29] Opinion available at https://www.oscn.net/dockets/GetDocument.aspx?ct=appellate&bc=1055265228&cn=S-2021-880&fmt=pdf

A short time later, another report of shots fired was submitted to Blackwell police. After some investigation, an officer located the shooter's vehicle at her home. (At the time, the officer did not know the shooter was the person involved in the earlier shooting that night or that she had just fired her gun at her mother. The shooter, however, was well known to the officer and, in fact, the officer had been to her home the previous night because the shooter's mother was concerned about her mental health.) At the home, the officer spoke to the shooter's mother, who was sitting in a car and reported the shooter had a gun and had taken a shot at her. The officer then realized the shooter was sitting in her white pickup and was pointing a gun at him. He also realized that the shooter was the person responsible for the earlier shooting.

The officer scrambled to take cover and ordered the shooter to put down her gun. The shooter refused and told the officer to put his down first. The shooter then fired toward the officer and the bullet went into the front of her mother's vehicle, behind which the officer had retreated for cover. The situation grew more complicated as the officer tried without success to get the shooter's mother to retreat to safety while at the same time trying to calm the shooter and get her to surrender. The shooter's delusional state apparently intensified during this time. Eventually gunfire was exchanged between the shooter and the officer and then the shooter started moving her truck toward her mother's car and the officer. The officer ordered the shooter to stop but she continued forward as if she intended to ram her mother's car to get out of the driveway. The officer fired one round at the front of the pickup. This caused the shooter to "stop the truck, back through the yard, and then drive off into the night." While backing up, the shooter fired additional rounds at the officer and hit his patrol unit. The officer fired an additional round at the truck as the shooter rounded the corner.

The officer began pursuit of the shooter. During the pursuit, the officer heard additional gunfire but was unsure whether the shooter was firing or if the shots came from Mitchell, who was attempting to intercept the shooter. Dashcam video showed that Mitchell fired several shots at the shooter as she turned on to the road he had set up on. The shooter was still being pursued by other officers. Mitchell's efforts did not stop the shooter, who continued on down the road. Mitchell joined the other pursuing officers and eventually overtook the other officers to lead the pursuit. Mitchell fired several shots at the shooter from inside his vehicle, blowing out his own windshield in the process. He fired a dozen additional rounds before the shooter turned on to another street. It appears the shooter fired back at police at least a couple of times during the pursuit.

After turning onto the other street, the shooter's pickup rolled to a stop on the side of the road. Mitchell exited his vehicle and began walking toward the pickup, firing fifteen rounds from an assault rifle as he did so. The pickup then started rolling forward again and Mitchell emptied his rifle's magazine, firing 24 or more additional rounds into it. Another officer also fired three shots at the pickup. Officers were then able to approach the vehicle, found the shooter incapacitated, and called for an ambulance.

After being charged with first degree manslaughter, Mitchell filed a pretrial motion to quash the information. Although the state is not required to present at a preliminary hearing evidence sufficient to convict, the state must produce sufficient evidence to "coincide with guilt and be inconsistent with innocence for a bind over to be proper." First degree manslaughter occurs when "perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed." 21 O.S. § 711(3).

The state's theory was that once the shooter had turned the corner and come to a stop, Mitchell was required to cease fire and give her an opportunity to surrender. Because the truck had stopped, the state argued, the shooter was no longer fleeing and the stop suggested her compliance with police directives.

Mitchell's defense team argued that his continued use of deadly force was objectively reasonable based on the totality of the circumstances including the fact that the shooter was a violent fleeing felon who was an ongoing threat to police and civilians and that she did not affirmatively indicate to officers an intent to surrender or submit to their authority.

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the Court of Criminal Appeals noted. *Mitchell* at p. 23 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Although it is clear that police cannot use deadly force against unarmed, non-dangerous suspects, when officers have probable cause to believe the suspect poses a threat of serious physical harm to officers or others, it is not constitutionally unreasonable to employ deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). After recounting the numerous dangerous circumstances involved in the events involved in this entire episode, the Court opined that "Mitchell was not required under these circumstances to stop firing and hope for the best based on the immediate and ongoing threat the officers faced[.]" *Mitchell* at p. 26.

State v. Mitchell provides a thorough analysis of a type of use of force and how in these circumstances it was constitutionally reasonable. It also constitutes somewhat of a "win" for peace officers who use deadly force in addressing threats to themselves and the public, but because the Court chose not to publish the case it does not have any formal precedential value moving forward. Further establishing that the Oklahoma Court of Criminal Appeals will never

14

revisit the law of Self-Defense as it relates to Private use of Firearms and what constitutes making one an aggressor thereby losing the rights of self-defense. *See RUTH v. STATE 1978 OK CR 79 581 P.2d 919 ¶8* [30]

    ***Wherefore***, Petitioner lodges an as applied challenge to the broad nature of the Manslaughter Statute and alleges that Petitioner's Manslaughter Conviction at issue with the Federal Communications Character Policy, is unconstitutional in that the broad nature of the Statute unconstitutionally criminalized his lawful use of a firearm, in violation of his U.S. Const. Amend. 4 rights to be "secure in his person, house, papers, and effects [to keep and bear arms]", his U.S. Const. Amend. 4 rights to be free from "unreasonable search and seizure", his U.S. Const. Amend 14 rights of "due process and equal protection of law" and his U.S. Const. Amend. 2 Rights of "Self-Defense*"* and absent the unconstitutionally broad nature of the Manslaughter Statute, no reasonable fact finder or jurist would have voted to Convict the Petitioner of the underlying offense.

    Petitioner along with his as applied challenge, also makes a facial *"Overbreadth Doctrine"* challenge to the Manslaughter Statute as it also potentially criminalizes behavior that is protected by the U.S. Const. Amend 1 "petitioning for redress of grievance" when the State unlawfully seizes a firearm, on account of its lawful but public use, and then is forced "to show cause" , thus unconstitutionally requiring one to choose between enforcing their right to due process as it relates to firearm possession and their unlawful seizure by the state, or risk losing their Second Amendment Right of self-defense altogether.

    B.  <u>The Federal Communications Commission Extended Character Policy as applied to the Petitioner is Punitive as opposed to Probative and its continued application violates Petitioners First, Fifth, and Eight Amendment Guarantees</u>.

---

[30] See n. 21

Although as previously shown that Petitioners Conviction at issue with the Commission Character Policy was obtained in violation of the United States Constitution, let's assume arguendo that Petitioners Conviction is Constitutionally Valid. The Application of the Commission Character Policy to the Petitioner is being applied in a Punitive measure and is not probative of whether or not Petitioner can be trusted to deal truthfully with the Commission and follow its rules.

The Wireless Telecommunications Bureau has passed "moral judgment" against the Petitioner because of the alleged nature of his "Crime" and in doing so the Commission has deprived the Petitioner of his U.S. Const. Amend 1 rights to partake in a regulated hobby that further facilitates the basic fundamental rights of speech and exchange of ideals under the well-regulated confines of its protection.

The Commission has deprived Petitioner of his U.S. Const. Amend 5 rights of due process to and administrative review so that he can establish mitigating factors of his Character.

The Commission has also violated Petitioner's U.S. Const. Amend. 5 rights against double jeopardy, by passing moral judgment as opposed to determining whether or not the "public interest will be served" and the Combined effects of all the multiple Constitutional Violations deprives the Petitioner of his U.S. Const. Amend 8 rights to be free from cruel and unusual punishment.

Hence considering that the Petitioners Conviction at issue with the Character Policy of the FCC was obtained in violation of the U.S. Constitution and the passing of moral judgment by the Wireless Telecommunications Bureau, the continued application of the  Petitioners Conviction and the Associated Character Policy is unconstitutional as applied to the Petitioner.

16

<u>**AVALIABILITY OF RELIEF ARGUMENT**</u>

1. **Absent a Declaratory Judgment and an Enforcement Writ of Prohibition, Petitioner has no available avenues of relief.**

The Wireless Telecommunications Bureau of the Federal Communications Commission, having unilaterally "passed moral judgment" , has declared Petitioner because of the nature of his  "crime" as *persona non grata* and considering that the Bureaus have been unsuccessful in convincing the *Office of Administrative Law Judges* to "rubber stamp", that all felons are lacking the required character to be a Station Licensee; thus forcing the licensing and enforcement bureaus to prove its case each and every time, consistent with the Published Character Policy; the Wireless Telecommunication's Bureau has no intention to process Petitioner's application of licensure, to "determine whether the public interest will be served", 47 U.S.C. § 309(a). *See Arm & Rage, LLC, WJBE(AM), Powell, TN, MB Docket No. 22-122, Initial Decision, FCC 23D-02* [31] (holding that Mr. Armstrong's felony conviction does not warrant revocation of Arm & Rage's license for WJBE) ; *In the Matter of AUBURN Network, Inc. MB Docket No. 21-20, Initial Decision, FCC 22D-01* [32] (holding that the goal of the Commission's character qualifications policy 'is not to pass moral judgment on applicants but, instead, to determine whether the public interest will be served.' The misdeeds of a public servant may indeed be relevant in gauging that person's ability to serve the public interest as an FCC licensee, but in this particular case and under these particular circumstances, the evidence presented does not satisfy the burden of proof. Accordingly, the licenses of Auburn Network will not be revoked).

---

[31] In the Matter of ARM & RAGE, LLC available at https://docs.fcc.gov/public/attachments/FCC-23D-02A1.pdf

[32] In the Matter of AUBURN NETWORK, INC. available at https://docs.fcc.gov/public/attachments/FCC-22D-01A1.pdf

Hence, the current administrative move, now, is to keep all *persona non grata*

applications in a "proverbial trash can", thus skirting administrative review under the

Administrative Procedures Act altogether. The rationale that has been proffered is that "the

Commission is currently reviewing its policies on certain crimes and your application is in that

category and will stay "pending" until the commission completes its "review," thus any APA

Mandamus Petition, 5 U.S.C. § 702, for "action withheld or unlawfully or unreasonable delayed"

will be countered by this rational argument "the commission is currently reviewing its policies"

and that "petitioner is seeking action on his preferred time frame" further arguing that Petitioner

cannot establish a "discreet agency action that [the FCC] is required to take" , *Norton v. S. Utah*

*Wilderness Alliance, 542 U.S. 55, 64 (2004)*.

Furthermore, notwithstanding the fact that the Commission itself has previously

declared, in a Memorandum Opinion and Order, 6 FCC Rcd No. 12, 3448 ¶ 15-16, [33] that it will

not adopt a "general deferral policy", as the Wireless Telecommunications Bureau has attempted

to do here, the issue of what constitutes unreasonable delay will be further abused by the FCC,

thus inviting this Court to act as a "rubber stamp" thereby denying any and all such Petitions by

persons of *persona non grata*. In addition, the commission will further argue that the "rule of

reason" cannot be applied "in the abstract, by reference to some number of months or years

beyond which agency inaction is presumed to be unlawful." *Mashpee Wampanoag Tribal*

---

[33] See Memorandum Opinion and Order,  6 FCC Rcd No. 12, 3448 ¶ 16, In the Matter of Policy Regarding Character Qualifications in Broadcast Licensing  Amendment of Part 1, the Rules of Practice to written Responses to Commissions Inquiries and Making of Misrepresentations to the Commission by Applicants, Permittees, and Licensees, and the Reporting of Information Regarding Character Qualifications (1991) "The 1990 Character Policy Statement indicated that, in appropriate cases, we would condition grants on the outcome of pending proceedings in other forums. We do not believe it would be appropriate to adopt a policy of blanket conditions in all cases or to adopt a general deferral policy. Rather it is our policy to review all such cases on their merits in determining whether a condition is appropriate and the parameters of any such conditions. We believe that this approach best balances the Commission's concern with character qualifications with the need to process applications expeditiously and to ensure prompt service to the public." Available at https://docs.fcc.gov/public/attachments/FCC-91-146A1.pdf

*Council v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003)*. Rather, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." Id. at 1100. Thus, before determining whether an agency's delay is sufficiently unreasonable to justify extraordinary relief, the Court must consider (among other things) "the complexity of the task at hand." Id. at 1102.

Hence, for these reasons alone the Petitioner need not exhaust further alternative avenues of relief within the FCC, to include the normal administrative hearing process, because any and all attempt will be futile, and he should not be required to wait 2, 5, 8, 10, 15, or even 25 years before this Court decides Petitioner has suffered a legal wrong requiring immediate remedy.

## 2. A Declaratory Judgment accompanied by an enforcement Writ of Prohibition will create an equitable remedy of relief.

A declaratory judgment accompanied with an Enforcement Writ issued by this court settling the disputed rights and constitutional issues will provide a remedy resolving the issues in this Article III Case and Controversy. Petitioner considered making a facial challenge to the FCC Character Policy and reasoned that if this court should find that the Federal Communications Commission expansion of its Character policy is unconstitutional and makes that declaration, then Petitioner Application could move forward for consideration of licensure under the previous adaption of the Character Policy that is until Congress Acts, if it should chose to do so, and pass legislation codifying the expansion of the Commissions Character Policy; thereby, congressionally creating the exact same problem petitioner now faces at his future renewal application.

As such, reason would dictate that the most important issue this Court should resolve is the Constitutionality of the Expansion of the Federal Communications Commission Character

Policy, as applied to the Petitioner, and whether or not this court would favor a declaration that

its application, and that the specific statutory fact pattern underlying his Felony Conviction at

issue with the Character Policy of the FCC is unconstitutional and otherwise presents a

fundamental miscarriage of justice, thus Plaintiff armed with such a Declaration, accompanied

by and enforcement Writ of Prohibition issued by this Court will have a remedy of relief made

available to him under the Oklahoma Post Conviction Procedure Act [34] , 22 OK Stat § 22-1080

(2024) , hence rendering the Commission Expanded Character Policy inapplicable to Petitioner,

allowing his application for licensure to proceeded.

3. **A writ of Prohibition is appropriately necessary and will aid the current and prospective jurisdiction of this Court by providing an enforcement mechanism protecting a Declaratory Judgment issued by this Court, correcting and thereby preventing further egregious conduct of the FCC in their attempts to circumvent administrative and judicial review of its decisions or the lack thereof as required by proper statutory authority.**

In considering whether or not this Court should issue a Writ of Prohibition, this court

should also consider providing a clear declaratory judgment that the Petitioner, and for that

matter all Felony Applicants, regardless of the nature of his Crime has a clear right to an

administrative hearing, 47 U.S.C. § 309(e), to meet his burden of proving he has the required

Character Qualifications, by proffering mitigating evidence of his character to become a station

licensee and should be afforded his Fifth Amendment due process right, and that the

Commission has a duty to "determine whether the public interest will be served", 47 U.S.C. §

---

[34] Any person who has been convicted of, or sentenced for, a crime and who claims: (a) that the conviction or the sentence was in violation of the Constitution of the United States… may institute a proceeding under this act in the court in which the judgment and sentence on conviction was imposed to secure the appropriate relief. Excluding a timely appeal, this act encompasses and replaces all common law and statutory methods of challenging a conviction or sentence. Available at https://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=70864

309(a) and to stop skirting the *Office of Administrative Law Judges* in an attempt to avoid its burden of proof.

This Court should enforce that declaration with a Writ of Prohibition barring the Commission from placing his, or any other Applicants, flagged application on Character Qualification Review into an indefinite "pending state", simply because of a self-serving proffered statement that "the commission is reviewing its policies on certain crimes."

Furthermore, since there is no clear deadline on when any application pending character review should be processed, this court should consider setting Ninety [90] Calendar days from the receive date of the application as a threshold for review and once that threshold has passed it should automatically be construed that "a substantial and material question of fact is presented or the Commission for any reason is unable to make the finding", 47 U.S.C. § 309(e), thus triggering an administrative hearing to determine the Character Qualifications of the applicant in question and "whether the public interest will be served." This is consistent with appropriately aiding this court in its current and future appellant jurisdiction, because it will prevent the FCC from unconstitutionally circumventing judicial review of its decisions or lack thereof.

As such, issuing a Declaratory Judgment and Writ of Prohibition in this regard will not burden the commission, because the administrative hearing is an important process in gathering facts to facilitate the Commission in determining, via a fair, impartial, and public forum, as to one's Character and "whether the public interest will be served."

## <u>CONCLUSION</u>

Supreme Court Justice Louis Brandeis said over a century ago: "Sunlight is said to be the best of disinfectants." This mantra of transparency and good governance remains true today and is a hallmark of a strong civil society. It is what we, as a nation, encourage from partners around the world. The Federal Communications Commission and by definition the United States, should be setting a global example of how to be more transparent, rather than an example of how the *Administrative State* can undermine democracy and hollow out the rule of law. Just as Martin Luther King Jr. once uttered  "Justice delayed is justice denied", it can equally be said and should be argued that lifetime disenfranchisement of a person, regardless of guilt or acquittal, from partaking in the basic benefits and privileges of a free and civil society on account of a prior felony and more specifically the alleged nature of their "crime", is counterintuitive to the concept of rehabilitation and borders on forced involuntary servitude , by being relegated to that of a "second class citizen" without hope of ever repaying his debt to society.

***Therefore***, Amateur Radio, though regulated by the Commission, is a personal hobby and the United States Government has no right to pass moral judgment on applicants thereby assuming the role of a "gate keeper" and unilaterally determining, without due process of law, who can pursue the benefits of partaking in a personal hobby, even if that hobby is well regulated within the First Amendment of the United States Constitution. The First Amendment guarantees the freedom to exercise the basic fundamental rights of speech and exchange of ideals under the well-regulated confines of its protection and this includes access to Amateur Radio after meeting technical training requirements and testing to use it effectively and legally.

***In closing***, Petitioner will further remind this court of Justice Louis D. Brandeis words of wisdom, "if we would guide by the light of reason, we must let our minds be bold", thus

Petitioner is asking this Court to step outside of its comfort zone, even if it means this court has to exercise supplemental jurisdiction to correct constitutional errors relating to Petitioners conviction as it relates to his applied challenge of the Character Policy of the FCC, and to boldly guide by the light of reason, reversing other decisions of this court and or establishing new precedent as necessary.

*Wherefore*, for the foregoing reasons, Petitioner having established "compelling equitable grounds" for relief. *In re Flyers Rights Educ. Fund, Inc., 61 F.4th 166, 167 n.2 (D.C. Cir. 2023) (citations omitted)*, and that his Petition is "one of the exceptionally rare cases" that warrants a judicial decree prohibiting agency action. *See In re Barr Labs., 930 F.2d 72, 76 (D.C. Cir. 1991)*, moves this Court to issue a Declaratory Judgment and Writ of Prohibition as both are "agreeable to the usages and principles of law" and appropriately necessary "in aid of its jurisdiction" to restore this courts proper judicial balance. Thus, preserving justice, and its Article III constitutional duty to review decisions of the Federal Communications Commission or lack and withholding thereof.

## CERTIFICATE OF SERVICE

Petitioner, hereby certifies that he has electronically filed this "Amended Petition for Declaratory Judgment and Writ of Prohibition" with the Clerk of the Court on June 20, 2024 and has further mailed a Copy of said Document to the Respondent "Federal Communications Commission" by U.S. Mail Postage Prepaid.

*/s/ Donald R.  Cowan*
Donald R. Cowan, *B.S.*
3768 SE 48th PL
Oklahoma City, OK 73135
(405) 708-1756
Cowan.Radio@gmail.com
Pro Se for Petitioner